UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MAURICIO SANTOS DORIA,

Petitioner,

v.

SERGIO ALBARRAN, et al.,

Respondents.

Case No. 26-cv-13374-JSC

**ORDER GRANTING APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

Re: Dkt. No. 3

Before the Court is Petitioner Mauricio Santos Doria's *Ex Parte* Motion for Temporary Restraining Order (TRO). (Dkt. No. 3.)[1] On November 6, 2026, Petitioner filed a Petition for Writ of Habeas Corpus and an Ex Parte Motion for Temporary Restraining Order (TRO) seeking, among other things, his immediate release from custody and to enjoin Respondents from re-detaining him absent prior notice and a pre-deprivation hearing. (Dkt. Nos. 1, 3.) Having reviewed the parties' submissions, and the relevant legal authority, the Court GRANTS the TRO, as modified below.

**BACKGROUND**

Mr. Santos Doria is a 44-year-old man from Brazil. (Dkt. No. 1 ¶ 1). According to the record before the Court, Mr. Santos Doria entered the United States on a B-2 tourist visa on June 5, 2017. (Dkt. No. 1 ¶ 1; Dkt. No. 6-2 at 3). He was authorized to remain in the United States for six months until December 4, 2017, and overstayed his visa. (Dkt. No. 6-2 at 3, 10.) Mr. Santos Doria filed an application for asylum and withholding of removal in 2023, which was received by the United States Citizenship and Immigration Services on June 10, 2023, and remains pending.

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

(Dkt. No. 1 ¶ 1; Dkt. No. 6-2 at 25). Mr. Santos Doria has lived in the Bay Area since about January 2018 and at the same address in San Mateo, California, since about September 2024. (Dkt. No. 1 ¶ 2.) He is authorized to work in the United States and has driven for Uber and Lyft since 2017. (Dkt. No. 1 ¶ 2; Dkt. No. 6-2 at 25.) He has been in a relationship with his fiancé for five years, and has lived with his fiancé since 2019. (Dkt. No. 1 ¶ 2.) Mr. Santos Doria has no criminal history. (*Id.*) He had never been entered into removal proceedings and had never received a Notice to Appear or encountered immigration authorities prior to this arrest. (*Id.*)

On November 6, 2026, at about 5:00 am, Mr. Santos Doria was driving to pick up an Uber passenger in San Carlos, California, when several Immigration and Customs Enforcement ("ICE") vehicles "turned on police lights, pulled him over, and crowded their vehicles around his car to cut him off." (*Id.* ¶ 1.) "Masked officers who called themselves police pulled [Mr. Santos Doria] from the car, placed him in hand and ankle cuffs" and transported him to the San Francisco ICE Field Office at 630 Sansome Street. (*Id.*) The officers did not show Mr. Santos Doria a warrant or any other document and did not tell him why he was being arrested. (*Id.*) Over three hours later, at 8:35 am, an ICE supervisor signed a Notice of Custody Determination. (*Id.*) The notice checks the "Detained" box but provides no reason for Mr. Santos Doria's detention. (Dkt. No. 1-1 at 15.) At 11:38 am ICE provided Petitioner a Notice to Appear. (Dkt. No. 1 ¶ 3.) A couple minutes later, at about 11:40 am, ICE provided a Form I-200 Warrant for Arrest of Alien, which Mr. Santos Doria had not seen before. (*Id.*) The Form I-200 had a single checked box indicating ICE had probable cause to believe Mr. Santos Doria was removable based on "biometric confirmation of the subject's identity and a records check of federal databases…." (Dkt. No. 1-1 at 10.) Later the same day, the underlying habeas petition and motion for a TRO were filed (Dkt. Nos. 1, 3.) The general duty judge ordered Mr. Santos Doria released and returned to the district "[t]o preserve the status quo pending consideration of the merits of the TRO and petition." (Dkt. No. 4.) Respondents filed their response to the TRO on November 7, 2026 (Dkt. No. 6) and confirmed they released Mr. Santos Doria in San Francisco on November 7, 2026, at approximately 8:25 pm (Dkt. No. 7 at 1).

//

## LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (cleaned up) (emphasis in original). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to ... preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

## DISCUSSION

Petitioner has demonstrated a likelihood of success on the merits of his claim that his

ongoing detention violates his procedural due process rights under the Fifth Amendment.[2,3] Petitioner's significant community ties and the government's decision not to detain him at any point since he applied for asylum and was provided a work authorization "has given rise to a protected liberty interest in remaining out of immigration custody that can only be taken away only if the government's procedure for doing so accords with due process." *Kharitonova v. Albarran*, No. 3:26-CV-01362-JSC, 2026 WL 2654723, at *2 (N.D. Cal. Sept. 8, 2026); *see, e.g.*, *Suarez v. Warden, California City Detention Facility*, No. 1:26-CV-05989-TLN-SCR, 2026 WL 2455252, at *2 (E.D. Cal. Aug. 21, 2026) ("Petitioner has a protected liberty interest in remaining free from custody based on his significant community ties and the government's decision not to detain him in or around February 2025, after he applied for asylum but had already overstayed his visa"); *Ke v. Janec[k]a*, No. 5:26-CV-04360-DTB, 2026 WL 2508150, at *3 (C.D. Cal. Aug. 25, 2026) ("Petitioner has demonstrated a protected liberty interest in remaining at liberty in the community absent sufficient justification for her re-detention, based on the government's decision not to detain her or otherwise impede her liberty while exercising authority over her for purposes of adjudicating her application for immigration relief" and collecting cases). The Due Process Clause entitles Petitioner to a bond hearing before an immigration judge prior to any arrest or detention. *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1030-36 (N.D. Cal. 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to similar circumstances).

Respondents' "insistence Petitioner lacks a liberty interest because it never before sought to detain him is specious." *Kharitonova v. Albarran*, No. 3:26-CV-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026); *see also Gagik T. v. Chestnut, et al.*, No. 1:26-cv-04337-MWJS, 2026 WL 1837413 (E.D. Cal. June 25, 2026); *Suarez v. Warden, California City Det. Facility*, No.

---

[2] The Court rejects Respondents' argument Petitioner was required to exhaust his administrative remedies before bringing his due process claims. *See Hernandez v. Mullin*, No. 5:26-CV-00585-JAK (ADSX), 2026 WL 846037, at *8 (C.D. Cal. Mar. 24, 2026) (excusing prudential exhaustion as futile because the petitioner's procedural due process claim was not within the jurisdiction of the BIA and "requiring Petitioner to be detained in alleged violation of his constitutional right to due process, pending [exhaustion] would cause irreparable harm."). On the contrary, due process challenges are precisely "the sort of constitutional challenge that is 'beyond the competence of that [agency] to decide.'" *Zamorano v. Garland*, 2 F.4th 1213, 1224 (9th Cir. 2021).

[3] The Court does not address Petitioner's Fourth Amendment claim as it is not necessary to resolve the motion.

1:26-CV-05989-TLN-SCR, 2026 WL 2455252, at *2 (E.D. Cal. Aug. 21, 2026), *report and recommendation adopted sub nom. A.S. v. Warden, California City Det. Facility*, No. 1:26-CV-05989 TLN SCR, 2026 WL 2523340 (E.D. Cal. Aug. 26, 2026). Although the government did not detain and then release Petitioner, it did make a decision not to detain him. By concluding "there was no need to detain Petitioner after his B-2 visitor visa had expired" and he had filed an application for asylum and withholding of removal, and instead "sanctioning his continued presence in the United States by granting … his employment authorization" the government "vested in Petitioner a liberty interest in his continued freedom." *Gagik T.*, 2026 WL 1837413 at *3; *Suarez*, 2026 WL 2455252, at *2 (same); *see also Rubio Vera v. Albarran*, No. 26-cv-10858-VC, Dkt. No. 18 at 1–2 (N.D. Cal. Oct. 9, 2026) (concluding grants of work authorization constitute "affirmative government decisions not to detain" a petitioner). Petitioner has at least "the same liberty interest in [his] continued freedom as an individual initially detained" and released. *Kharitonova*, 2026 WL 531441, at *2.

To determine what procedures are constitutionally sufficient to protect Petitioner's liberty interest, the Court applies the three-part test established in *Matthews v. Eldridge:* (1) the private interest affected; (2) the risk of an erroneous deprivation and the probable value of any additional or substitute procedural safeguards; and (3) the government's interest. 424 U.S. 319, 335 (1976). Each of these factors weighs in Petitioner's favor.

First, as discussed above, Petitioner has a significant liberty interest in remaining free from detention as he has lived for the last nine years. *See Kharitonova*, 2026 WL 531441, at *2; *Chaparro Ayala v. Albarran*, No. 26-CV-09430-CRB, 2026 WL 2621251, at *2 (N.D. Cal. Sept. 4, 2026); *Garcia v. Albarran*, No. 26-cv-04839, 2026 WL 1454512, at *2 (N.D. Cal. May 21, 2026); *see also Pinchi*, 792 F. Supp. 3d at 1033 (emphasizing petitioner developed "extensive relations of support and interdependence" over time that "underscore the high stakes of [his] liberty."). Second, "the risk of an erroneous deprivation [of liberty] is high" when, as here, Petitioner has not received *any* bond or custody determination hearing. *Kharitonova*, 2026 WL 2654723, at *2 (quoting *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) (emphasis added)). Civil immigration detention is nonpunitive and

permissible only to prevent flight or protect against danger to the community. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The government offers no evidence Petitioner's detention would serve either purpose. On the contrary, Petitioner has no criminal record, and has continuous and long-term residency in the area, sustained employment, local ties, and a fiancé whom he is currently living with. *See Chaparro Ayala*, 2026 WL 2621251, at *3. Under these circumstances, "a post-deprivation hearing is not a sufficient procedural safeguard." *Kharitonova*, 2026 WL 2654723, at *2 (N.D. Cal. Sept. 8, 2026); *see Domingo v. Kaiser*, No. 25-CV-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Finally, the government has not articulated any legitimate interest in support of detaining Petitioner without a pre-detention hearing. "In immigration court, custody hearings are routine and impose a minimal" cost." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025) (cleaned up). "If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). In sum, each of the *Matthews* factors favor Petitioner so he has demonstrated a strong likelihood of success on the merits.

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. The likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a hearing is "likely unconstitutional" that he has "also carried [his] burden as to irreparable harm." *Id.* at 995.

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-

United States District Court
Northern District of California

cv01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Meanwhile, the potential harm to the government is minimal. The Government, at most, faces a short delay in detaining Petitioner if it ultimately demonstrates his detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). The balance of hardships thus tips decidedly in Petitioner's favor.

A TRO immediately releasing Petitioner is appropriate to return them to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo is "the last uncontested status which preceded the pending controversy," which is "the moment prior to Petitioner's likely illegal detention." *Valdez Becerra v. Albarran*, No. 3:26-cv-12587-JSC, 2026 WL 3363162, at *9 (N.D. Cal. Nov. 5, 2026) (citations omitted). Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is GRANTED as detailed below.

Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Therefore, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by ... hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

**ORDER**

For the foregoing reasons, IT IS ORDERED that:

(1) Petitioner's application is GRANTED to preserve the status quo pending further briefing and a hearing on this matter if necessary.

(2) Respondents are ORDERED to release Petitioner immediately from Respondents' custody and ENJOINED AND RESTRAINED from re-detaining Petitioner without at least seven days' notice and a pre-deprivation hearing before a neutral decisionmaker.

(3) Respondents are ORDERED to return Petitioner's personal property, which was confiscated by Respondents upon his arrest on November 6, 2026, including Petitioner's cell phone, car key, and his Employment Authorization Document. (Dkt. No. 3 at 25.)

(4) The parties are ORDERED to meet and confer to determine whether this Order disposes of the habeas petition such that judgment can be entered in Petitioner's favor on the terms as set forth above. In particular, they shall jointly file a written submission regarding the above **by November 20, 2026.** The Court will set a briefing schedule on preliminary injunction or the habeas petition if and as needed, upon receipt of the parties' written submission.

(5) This Order shall remain in effect until 5:00 p.m. on November 27, 2026, or as otherwise directed by the Court.

This Order disposes of Docket No. 3.

**IT IS SO ORDERED.**

Dated: November 13, 2026

JACQUELINE SCOTT CORLEY
United States District Judge